GEORGE F. POTARACKE, Executive Director State of WisconsinBoard on Aging and Long Term Care
You seek my opinion as to the legality of a guarantor provision found in certain nursing home admission agreements used in Wisconsin.
You state that nursing homes often use an admission agreement under which a person admitted to a nursing home must have another person co-sign the agreement in the capacity of a "guarantor" or "designated representative." A guarantor, in this context, is a person who enters into a contract with a nursing home assuring payment for the care and maintenance of a resident. The contract obligates the guarantor to underwrite the resident's care indefinitely, for a stated period of time (e.g., two years) or until subsequent amendment by the parties to the guarantor contract.
Your letter questions: (1) whether the usage of such provisions violates federal or Wisconsin law; (2) whether such provisions are enforceable; and (3) whether attempts at enforcement after the nursing home resident is Medicaid eligible violate section49.49 (4), Stats. Faced with the impossibility of knowing all of the relevant facts that could be present in any given case that might arise, it is not feasible to give absolute answers in the abstract. However, bearing that limitation in mind, I do conclude the following. First of all, the mere requirement that there be a contract co-signor with a prospective private pay resident is notper se illegal. But if such contract provisions are essentially a device to erode the "antisupplementation rule" discussed below, or impede the resident's conversion to Medicaid payment when eligible, they could be deemed by a court as void or even subject their instigator to criminal prosecution. Furthermore, once the resident becomes Medicaid eligible, attempts at enforcement of the guarantor provision would most likely be viewed as violations of section 49.49 (4).
The situation that prompts your questions seems to be an extension of the problem dealt with by my predecessor in 75 Op. Att'y Gen. 14 (1986), issued March 7, 1986. That opinion concluded that *Page 296 
nursing home admission contract provisions requiring a resident entering on private pay status to remain so for a specified period of time before converting to Medicaid, regardless of whether or not the person became eligible for Medicaid sooner, were most likely illegal. In that opinion as well as this one the central issue is not so much the contract provisions themselves, but whether in any particular case they operate as a device to defeat Medicaid regulations.
The legal authority examined in the prior opinion need not be repeated here. It suffices to note that for nearly twenty years Congress and the various states have striven to establish that nursing homes must accept Medicaid reimbursement as payment in full and to abolish supplementation agreements with residents or their families. The relevant criminal statutes reflecting this policy are 42 U.S.C. § 1396h(d) and its Wisconsin counterpart, section 49.49 (4), which provides as follows:
 (4) Prohibited Facility Charges. (a) No person, in connection with the medical assistance program when the cost of the services provided to the patient is paid for in whole or in part by the state, may knowingly and wilfully charge, solicit, accept or receive, in addition to any amount otherwise required to be paid under a medical assistance program, any gift, money, donation or other consideration, other than a charitable, religious or philanthropic contribution from an organization or from a person unrelated to the patient, as a precondition of admitting a patient to a hospital, skilled nursing facility or intermediate care facility, or as a requirement for the patient's continued stay in such a facility.
Section 49.49 (4) generally prohibits supplementation arrangements with Medicaid recipients as a precondition to their admission or continued care. Thus, so long as a nursing home resident is not Medicaid eligible, the presence of a guarantor agreement poses no conflict with the statute. However, once the resident becomes Medicaid eligible and the nursing home attempts to enforce supplemental payment from the guarantor in return for the resident's continued stay at the facility, a conflict would exist and the statute would govern. See Milwaukee Police Ass'n v.City of Milwaukee, 113 Wis.2d 192, 335 N.W.2d 417 (1983). Under such circumstances, it is my opinion that the courts would likely view the guarantor provision as an illegal device to supplement the Medicaid payments in violation of section 49.49 (4). *Page 297 
Although there have been no Wisconsin cases construing guarantor provisions, in Glengariff Corp. v. Snook, et al.,471 N.Y.S.2d 973, 122 Misc. 2d 784, Medicare and Medicaid Guide (CCH) ¶ 33,605 at 9905 (N.Y.Sup.Ct., Nassau County, 1984), the court refused to enforce the following provision:
 Patient and Sponsor acknowledge and agree that the Glengariff Corporation is not obligated to accept Medicaid payments in lieu of the private payments from the Patient and Sponsor required hereunder unless and until (a) the Patient shall have been a patient in the facility for a period of at least 18 months and (b) the Patient and Sponsor shall have paid in full all sums due The Glengariff Corporation hereunder from the Patient and Sponsor for all periods prior to the first actual receipt of such Medicaid payments and shall have performed in full all of the obligations under this agreement on their part to be performed during such periods. The Glengariff Corporation will credit against the sums due The Glengariff Corporation hereunder from the Patient and Sponsor any reimbursements actually received from Medicare for Facility services and items furnished by the Glengariff Corporation to the Patient.
Id., ¶ 33,605 at 9905, emphasis supplied.
In Glengariff, the "sponsor" placed his mother in a nursing home and entered into a contract which included the above provision. Prior to the end of the eighteen month private pay period, the sponsor determined that he was no longer able to maintain the payments. Because his mother no longer had necessary resources, she became a certified Medicaid eligible person. Defendant refused to pay the difference between Medicaid payments and the contract. The corporation began a collection action, arguing that the right to apply for Medicaid benefits had been waived for the duration of the contract period. The court concluded that public policy considerations precluded a finding that the right to apply for Medicaid benefits had been waived. It therefore held that the defendant's mother had a right under the circumstances to apply for and become certified eligible for Medicaid benefits. The court also found that it was against public policy to require a person or a sponsor of a person certified eligible for Medicaid benefits to pay charges in excess of the Medicaid payments. *Page 298 
It is my opinion that a court in Wisconsin would most likely reach the same result if presented with the attempted enforcement of a guarantor provision against a Medicaid certified nursing home resident.
DJH:MJL:EGY *Page 299